EMILY JOHNSON HENN (SBN 269482)
MEGAN L. RODGERS (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
Telephone: 650-632-4700
Facsimile: 650-632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
RICHARD B. OATIS (SBN 307701)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94102
Telephone: 415-591-6000
Facsimile: 415-591-6091
Email: sfrankel@cov.com

*Attorneys for Defendants Expedia, Inc., Hotels.com, L.P., Hotels.com GP, LLC, Orbitz, LLC, Venere Net S.r.l., and Expedia Australia Investments Pty Ltd.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BUCKEYE TREE LODGE AND SEQUOIA VILLAGE INN, LLC, ET AL.,<br><br>     Plaintiffs,<br><br>     v.<br><br>EXPEDIA, INC., HOTELS.COM, L.P., HOTELS.COM GP, LLC, ORBITZ, LLC, VENERE NET S.R.L DBA VENERE NET, LLC, and EXPEDIA AUSTRALIA INVESTMENTS PTY LTD.,<br><br>     Defendants. | Civil Case No.: 16-cv-04721-VC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date: November 29, 2018<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................. iii

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 4

    A.    The Many Ways That Hotels Contract for Inventory To Appear on Expedia .................... 4

    B.    The Role of Online Travel Agencies in a Consumer's Search for Accommodations ................................................................................................................ 5

    C.    The Named Plaintiffs Are Differently Situated. ................................................................ 5

        1.    Buckeye Appeared Because of a Coding Error that Has Been Corrected. .............. 5

        2.    The Mansion Appeared Because of Its Relationship with TravelClick................... 5

        3.    Shiloh Appeared Because of Its Relationships with Undisclosed Third Parties................................................................................................................... 6

        4.    Prospect Appeared Because of Its Relationship with Destination Management Companies.................................................................................... 7

        5.    The Other Hotels Identified by Plaintiffs Are Also Differently Situated. .............. 8

    D.    Search Engine Advertising of Named Plaintiffs Was Automated and Did Not Include Unavailability Messaging. ............................................................................... 8

    E.    Expedia's Phone Numbers Are Not Misleading. ............................................................ 9

    F.    The Four Websites at Issue Differ in Significant Ways. ................................................ 9

    G.    The French Court Found that Expedia's Current Unavailability Messaging Is Not Misleading............................................................................................................ 10

ARGUMENT .............................................................................................................................. 10

I.    PLAINTIFFS FAIL TO IDENTIFY A COMMON QUESTION THAT CAN RESOLVE THE CLAIMS, AND THEY ARE NOT TYPICAL OF THE PROPOSED CLASS. ................. 11

II.    INDIVIDUALIZED ISSUES PREDOMINATE AS TO KEY, NECESSARY ELEMENTS OF BOTH LANHAM ACT CLAIMS, PRECLUDING RULE 23(b)(3) CERTIFICATION. .............................................................................................................. 12

    A.    Plaintiffs Have Not Shown that the False Advertising Elements of Deception and Materiality Are Subject to Common Proof....................................................... 12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION
CIVIL CASE NO. 16-CV-04721-VC

B.  Plaintiffs Have Not Shown that the Validity of Their Marks or Likelihood of Confusion—Two Required Elements of a False Association Claim—Are Subject to Common Proof.....................................................................13

C.  Injury Is Not Subject to Common Proof, and Plaintiffs Cannot Avoid this Problem Through a Presumption of Injury.......................................................15

1.  Plaintiffs Make No Effort To Show How Injury to Hotels—And Causation of that Injury—Could Be Proven on a Classwide Basis. ......................................15

2.  Plaintiffs Cannot Avoid this Problem by Presuming Injury. ................................17

D.  Plaintiffs Have Failed To Offer Any Damages Model, Let Alone a Model Consistent with Their Liability Case. ...................................................19

E.  Class Treatment Would Not Be Superior or Manageable for the Overbroad and Ill-Defined Proposed Class, Which Includes Many Properties That Suffered No Injury.......................................................................20

III.  PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES UNDER RULE 23(a), PRECLUDING CERTIFICATION OF ANY CLASS. ......................................21

IV.  PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF, WHICH IN ANY EVENT WOULD NOT APPLY GENERALLY TO THE CLASS, PRECLUDING CERTIFICATION UNDER RULE 23(b)(2). ................................22

A.  Plaintiffs Lack Article III Standing to Pursue Injunctive Relief........................22

B.  Plaintiffs' Claims Are Not Cohesive. ...................................................25

V.  A RULE 23(c)(4) CLASS WOULD NOT MATERIALLY ADVANCE THE LITIGATION.............................................................27

CONCLUSION.............................................................28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. ConAgra Foods, Inc.*,
2015 WL 13035176 (N.D. Cal. Jan. 9, 2015) ...................................................................23

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
247 F.R.D. 156 (C.D. Cal. 2007) ......................................................................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..........................................................................................................21

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .........................................................................20

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
457 F.3d 1062 (9th Cir. 2006) ...........................................................................................15

*Backhaut v. Apple Inc.*,
2015 WL 4776427 (N.D. Cal. Aug. 13, 2015), *aff'd*, 723 Fed. App'x 405 (9th Cir.
2018) ...................................................................................................................................25

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ...........................................................................................21

*Bruton v. Gerber Prods. Co.*,
2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) .............................................................23, 25

*Chambers v. Time Warner*,
2003 WL 749422 (S.D.N.Y. Mar. 5, 2003) ................................................................14, 26

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
317 F.R.D. 91 (N.D. Cal. 2016) .........................................................................................11

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
867 F.3d 1093 (9th Cir. 2017) ...........................................................................................11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ......................................................................................................19, 20

*Corvello v. Wells Fargo Bank N.A.*,
2016 WL 3995909 (N.D. Cal. Jan. 29, 2016) (Chhabria, J.) .......................................10, 11

*D.C. by & through Garter v. Cty. of San Diego*,
2018 WL 692252 (S.D. Cal. Feb. 2, 2018) ..................................................................27, 28

*Denney v. Deutsch Bank AG,*
  443 F.3d 253 (2d Cir. 2006)................................................................20

*Des Roches v. Cal. Physicians' Serv.,*
  320 F.R.D. 486 (N.D. Cal. 2017)........................................................25

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) .............................................................12

*FPX, LLC v. Google, Inc.,*
  276 F.R.D. 543 (E.D. Tex. 2011).................................................14, 26

*Groupion, LLC v. Groupon, Inc.,*
  826 F. Supp. 2d 1156 (N.D. Cal. 2011) ............................................14

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...........................................................21

*Harper House, Inc. v. Thomas Nelson, Inc.,*
  889 F.2d 197 (9th Cir. 1989) .............................................................19

*Herskowitz v. Apple, Inc.,*
  301 F.R.D. 460 (N.D. Cal. 2014)........................................................27

*Hodgers-Durgin v. De La Vina,*
  199 F.3d 1037 (9th Cir. 1999) ...........................................................23

*Huu Nguyen v. Nissan North America, Inc.,*
  2018 WL 1831857 (N.D. Cal. Apr. 9, 2018) .....................................28

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.,*
  270 F.R.D. 521 (N.D. Cal. 2010)........................................................22

*In re Graphics Processing Units Antitrust Litig.,*
  253 F.R.D. 478 (N.D. Cal. 2008).................................................15, 16

*K&N Eng'g, Inc. v. Spectre Performance,*
  2012 WL 12893797 (C.D. Cal. Aug. 2, 2012)....................................18

*Kosta v. Del Monte Foods, Inc.,*
  308 F.R.D. 217 (N.D. Cal. 2015)........................................................13

*Krueger v. Wyeth, Inc.,*
  2008 WL 481956 (S.D. Cal. Feb. 19, 2008) ......................................22

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990)...........................................................................23

*Maier Brewing Co. v. Fleischmann Distilling Corp.,*
  390 F.2d 117 (9th Cir. 1968) .............................................................18

*Marco Bicego S.P.A. v. Kantis*,
  2017 WL 2651985 (N.D. Cal. June 20, 2017) ...................................................13

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .............................................................................20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) .....................................................................14, 15

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) .....................................................................24, 25

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*
  793 F.2d 1132 (9th Cir. 1986) ...........................................................................25

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) .............................................................................23

*Rahman v. Mott's LLP*,
  693 Fed. App'x 578 (9th Cir. 2017) ........................................................11, 27, 28

*Rice v. Sunbeam Prods., Inc.*,
  2014 WL 794331 (C.D. Cal. Feb. 24, 2014)......................................................20

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D. Cal. Mar. 10, 2014) ................................................11, 12

*S. Cal. Darts Ass'n v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) .....................................................................13, 14, 26

*Salon Fad v. L'Oreal USA, Inc.*,
  2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011)....................................................17

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ...........................................................................12

*Sugai Prods., Inc. v. Kona Kai Farms, Inc.*,
  1997 WL 824022 (D. Haw. Nov. 19, 1997) ..................................................15, 22

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015)...................................................................10, 27

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) .....................................................................17, 18, 19

*U-Haul International, Inc. v. Jartran, Inc.*,
  681 F.2d 1159 (9th Cir. 1982) ...........................................................................18

*U-Haul International, Inc. v. Jartran, Inc.*
  793 F.2d 1034 (9th Cir. 1986) ...........................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................10, 11, 26, 27

*Western States Wholesale, Inc. v. Synthetic Industries, Inc.*
    206 F.R.D. 271 (C.D. Cal. 2002) ................................................................................17, 22

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010) ................................................................................................13

**Statutes**

Lanham Act ................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

# INTRODUCTION

Despite requesting three months to strengthen and focus their class certification motion, Plaintiffs submitted a renewed motion that is even more threadbare than their first. Instead of bolstering legal arguments relating to certification of the smaller Rule 23(b)(2) or (b)(3) class, Plaintiffs merely tacked on two paragraphs now seeking a Rule 23(c)(4) class. Instead of tailoring their damages model to the smaller class, Plaintiffs failed to submit any damages model whatsoever. Instead of attempting to correct the deficiencies of their consumer survey, Plaintiffs submitted a renewed motion without one. And, instead of defending their novel arguments for standing, Plaintiffs proposed two new hotels that they argue may have standing but which in fact present idiosyncratic fact patterns that cannot support standing or certification of any class. What results is a motion that suffers from the same flaws as Plaintiffs' original motion and confirms that class certification is not appropriate.

Buckeye Tree Lodge and Sequoia Village Inn, LLC ("Buckeye LLC"), The Mansion on O Street ("The Mansion"), Prospect Historic Hotel ("Prospect"), and Shiloh Morning Inn ("Shiloh") claim that they were each included in search results on Expedia.com, Hotels.com, Orbitz.com, and Travelocity.com (the "Websites") next to "unavailability messaging" (that is, language indicating no rooms could be booked on the Websites) and in certain advertising when they had no contract or affiliation with Expedia.[1] This group of Plaintiffs aptly illustrates the complexity of the online travel industry and the reasons why class certification is inappropriate. Not one of these hotels is similar to another. Indeed the manner in which Expedia received rate and availability information about each of the four hotels, if at all, and the reasons that the hotels appeared on the Websites, vary significantly:

- Buckeye LLC formerly owned the hotel Buckeye Tree Lodge ("Buckeye"), which appeared on the Websites because of a coding error that caused certain unaffiliated properties to appear and that has since been corrected.

- The Mansion appeared because it had a relationship with a channel manager (an entity that disseminated its rate and availability information to Global Distribution Systems ("GDSs"), which in turn distributed the information to online travel agencies, including Expedia). The Mansion claims to have terminated its relationship with that channel manager, but it is undisputed that Expedia did not receive notification of the termination

---

[1] "Expedia" refers to Expedia, Inc., Hotels.com, L.P., Hotels.com GP, LLC, Orbitz, LLC, Venere Net S.r.l. dba Venere Net, LLC, and Expedia Australia Investments Pty Ltd.

from all GDSs.

- Expedia facilitated 28 reservations at Shiloh between April 2012 and October 2015, when the property was bookable on Expedia—apparently through contractual relationships with third parties. Howell Decl. ¶ 3. But the owner of Shiloh was unable to explain what contractual relationships Shiloh may have had with third parties that authorized GDSs and BedandBreakfast.com to supply Expedia with rate and availability information, let alone when those relationships may have terminated. Ex. 1 at 106:13-16.[2]

- Prospect was shown with unavailability messaging for yet a different reason. It has an ongoing relationship with up to eight different destination management companies ("DMCs") that work in the design and implementation of tours and logistics. Ex. 2 at 129:17-130:2. These DMCs in turn work with their partners, which include travel agents and other websites, to facilitate reservations at hotels. Nadkarni Decl. ¶ 8; Ex. 2 at 69:11-15, 131:9-22. It appears that one of the DMCs worked with HotelBeds to distribute rate and availability information regarding Prospect, and HotelBeds, essentially functioning as a channel manager, then contracted with Expedia to market rooms at Prospect. Nadkarni Decl. ¶ 15. However, when Expedia tried to facilitate reservations at Prospect, customers who made it to a payment page on the Websites received an error message that resulted in a failed reservation attempt—apparently because of a technical glitch caused by Expedia having to verify rate and availability information through so many third parties. *Id.* ¶ 16. As a result of the high error rates, Expedia and HotelBeds agreed that Expedia would stop offering availability information on the Websites for Prospect until the technical issue was corrected. *Id.* ¶ 17.

Simply put, this is not a case that presents common issues appropriate for class certification. The question of whether, when, how, and on what terms each hotel appeared on the Websites is particular to each hotel. Some appeared on the Websites because the properties had third-party contractual relationships that made it entirely proper for them to be there; one appeared due to a coding error on the part of Expedia that has since been corrected; one, by contract, could be displayed on Expedia but, due to a technical glitch, was not shown with availability on the Websites. Not one of the Plaintiffs is typical of another (let alone the proposed class), there is no commonality among their claims, and a single injunction, whatever it might require (Plaintiffs are silent on that subject), would not provide relief to each member of the class.

Despite the Court's clear directive to Plaintiffs to limit the proposed class in their renewed motion to a cohesive group of unaffiliated hotels, Plaintiffs have once again put forward an overly

---

[2] Unless otherwise indicated, "Ex. __" refers to the exhibits of the Declaration of Richard B. Oatis.

expansive class definition. Plaintiffs' proposed class definition includes all hotels that "did not have a *booking agreement with Defendants*, but whose names appeared on the [Websites]." Mem. P. & A. in Supp. of Pls.' Renewed Mot. for Class Cert., Dkt. 126-1 ("Mot.") at 1 (emphasis added). This definition attempts to obscure meaningful differences among the Plaintiffs and members of the putative class by lumping together hotels with any number of contracts with third-party channel managers, GDSs, and DMCs, which in turn have contracts with Expedia that authorize the appearance of those hotels on the Websites. So the proposed class would include numerous properties that contracted with third parties that in turn contracted with Expedia for the properties to be on Expedia. Plaintiffs' supposedly narrowed definition is just as problematic and over-inclusive as the first.

Attempting to mask the intractable problems in their renewed motion, Plaintiffs present arguments in support of class certification at an exceedingly high level of generality. Plaintiffs now assert two claims under the Lanham Act—false advertising and false association—but fail to show that the elements of either claim can be demonstrated with common proof. For example, abandoning any attempt at a consumer survey, Plaintiffs have presented no evidence that the challenged unavailability messaging is deceptive or material (two elements of a false advertising claim), let alone that those elements can be proven on behalf of a class through common proof. Nor have Plaintiffs provided any evidence—common or otherwise—to show the validity of their marks or that consumers were likely to be confused by the challenged advertisements (two required elements of a false association claim).

And recognizing that Plaintiffs cannot prove injury or causation (two required elements of both Lanham Act claims) at all, much less by common evidence, Plaintiffs attempt an end-run around predominance by urging the Court to presume injury. Under Ninth Circuit law, it would be error to presume injury here. Moreover, any such injury would turn on numerous individualized questions, including whether, when, how, and on what terms each hotel appeared on the Websites, whether a hotel appeared on the Websites with unavailability messaging that differed from the availability in the hotel's own reservation system, and whether any consumers booked at another hotel as a result of seeing the unavailability message. Plaintiffs cannot meet their burden to prove that injury and causation can be established by common proof. And even if disgorgement of profits were an appropriate remedy, Plaintiffs fail to present *any* damages model or to suggest a method of apportioning profits that would

- 3 -

avoid conflicts with other class members.

Finally, the Named Plaintiffs lack standing to pursue injunctive relief because they have made no showing that they face a likelihood of future injury. And Plaintiffs' Hail Mary pass seeking certification of a Rule 23(c)(4) class, even if it were permissible, would not materially advance the litigation.

The renewed motion for class certification should be denied.

## FACTUAL BACKGROUND

### A. The Many Ways That Hotels Contract for Inventory To Appear on Expedia

While the majority of hotels contract directly with Expedia, Dkt. 117-1 ¶¶ 2, 5; Nadkarni Decl. ¶¶ 7, 9, other hotels contract with a number of third parties that further disseminate their rate and availability information to online travel agencies ("OTAs") like Expedia:

- Hotels may contract with channel managers (such as TravelClick and Webervations), which are third-party service providers that allow a hotel to update its rate, availability, and reservation information across several platforms at once. Dkt. 117-1 ¶ 4. Channel managers may contract with GDSs (described below) to further disseminate the rate and availability information to OTAs.

- Hotels may affiliate indirectly through third-party GDSs (such as Pegasus and Sabre), which are third-party electronic reservation networks that distribute inventory to travel agents and OTAs with whom they contract. *Id.* ¶ 5.

- Hotels may also contract with "bed banks," which are third-party wholesalers that contract directly with hotels and hold room inventory in bulk. Bed banks then contract with OTAs like Expedia and other points of sale to sell these rooms. *Id.* ¶ 6.

- Hotels may contract with DMCs, which are companies that work in the design and implementation of events, activities, tours, and logistics. These companies are generally not consumer-facing and instead partner with third parties, including travel agents and other OTAs, to facilitate reservations at hotels. Nadkarni Decl. ¶ 8.

- Hotels may also contract with specialized OTAs like HomeAway and BedandBreakfast.com, which may feature boutique inns or bed and breakfasts. These specialized OTAs in turn may supply OTAs like Expedia with rate and inventory information. *Id.* ¶ 9.

When a hotel representative signs a contract with one of these entities, the hotel commonly agrees that rate and availability information will be further disseminated to other parties. *See, e.g.*, Exs. 6-8. Those other parties may or may not be identified by name. *Id.* Some hotels may contract with multiple entities that supply Expedia with inventory. Nadkarni Decl. ¶ 5.

**B. The Role of Online Travel Agencies in a Consumer's Search for Accommodations**

It is undisputed that the path an individual consumer takes from the moment she decides to travel to the moment she books a hotel room is multifaceted and complex. Dkt. 112-16 at 11-17. On average, a consumer consults multiple resource types (both online and offline) over as many as 45 days throughout her decision-making process and makes 140 visits to travel sites before making a purchase. *Id*. at 11-13; *id*., Ex. 1. Consumer travel resources may include recommendations from friends and family, internet searches, online and offline travel agents, hotel websites, so-called metasites like Kayak, and review sites like TripAdvisor. *Id*. at 12. While OTAs like Expedia feature as a top online resource at the start of a consumer's search process, many consumers visit hotel sites directly as they move through their decision-making process. *Id*. at 12-15.

**C. The Named Plaintiffs Are Differently Situated.**

**1. Buckeye Appeared Because of a Coding Error that Has Been Corrected.**

As this Court is aware, Buckeye, a property formerly but no longer owned by Plaintiff Buckeye LLC, *see* Dkt. 126-3, appeared on the Websites because of a coding error that Expedia has since corrected. In early 2015, Dennis Villavicencio, the then-owner of Buckeye, communicated with an Expedia market manager, Benjamin Gutierrez, about joining the Expedia platform. Dkt. 104-13 ¶ 21. Although Mr. Villavicencio ultimately did not sign the contract or partner with Expedia, an inadvertent coding setting in Expedia's system erroneously caused Buckeye to appear in response to certain searches. *See* Dkt. 103 at 3-5. As a result, from February 2015 through August 2016, the Buckeye infosite page could appear in response to certain searches, and, if a user entered travel dates, the Websites would show that Expedia had no availability at the hotel for those dates. Dkt. 104-13 ¶¶ 23, 27. When Expedia became aware of the coding issue, its engineers changed the coding going forward to ensure that hotels onboarded would not appear prematurely in search results. *Id.* ¶¶ 24-28. Expedia conducted searches of its records and determined that the total number of hotels that may have been affected by this coding error is, at most, 165. Dkt. 104-10 ¶ 8.

**2. The Mansion Appeared Because of Its Relationship with TravelClick.**

The Mansion, a hotel located in Washington, DC, appeared on the Websites because of its relationship with TravelClick, a channel manager. *See* Dkt. 103 at 5-6. The Mansion contracted with

TravelClick for the express purpose of disseminating its rate and availability information to GDSs. Ex. 3 at 126:10-127:1; Dkt. 103-7 at 7-8. Those GDSs in turn provided the information to Expedia. Dkt. 104-13 ¶¶ 31, 32. When a customer searched on Expedia for availability information about The Mansion, Expedia's system would query the GDSs to determine whether The Mansion had availability. *Id.* Consumers made reservations for The Mansion on the Websites as late as September 23, 2013. *Id.* ¶ 33; Dkt. 112-18.

The Mansion's owner claims to have cancelled its contract with TravelClick around January 2014. Dkt. 103-7 at 7-8. But it is undisputed that two of the three GDSs supplied by TravelClick never notified Expedia of The Mansion's cancellation of its contract with TravelClick. Dkt. 104-13 ¶ 34. As a result, when customers searched for The Mansion on Expedia, Expedia continued to query those two GDSs for information about The Mansion's availability, in response to which the GDSs would report that there was no availability at the property. *Id.* ¶¶ 31, 34. Consequently, The Mansion continued to appear on the Websites with unavailability messaging in response to certain searches from January 2014 until November 2016. *Id.* ¶ 34. Notably, Expedia's records indicate that not one visitor landed on The Mansion's infosite page and subsequently booked another hotel on the Websites during that visit. Dkt. 104-23 ¶¶ 5-6; Dkt. 103-25 ¶ 3.

Expedia searched its records to determine whether any hotel that was formerly bookable through a GDS and was not currently bookable might still have been appearing on the Websites. Dkt. 103-28 ¶¶ 2-5. Expedia determined that 24 hotels may fall within that category, and made them "inactive" so they would not appear on the Websites unless they subsequently signed a contract or revived their relationship with a third-party inventory provider. *Id.*

### 3. Shiloh Appeared Because of Its Relationships with Undisclosed Third Parties.

Shiloh is a bed and breakfast located in Ardmore, Oklahoma. Expedia's records indicate that Shiloh appeared on the Websites as early as 2006 when inventory was provided by two GDSs, presumably pursuant to Shiloh's contract with a channel manager. Nadkarni Decl. ¶ 12. Expedia's records also indicate that Shiloh appeared on the Websites as early as 2007 when inventory may have been provided to Expedia through BedandBreakfast.com. *Id.* Shiloh's current owner, David Pfau, who purchased the hotel on December 31, 2009, was unable to explain when those third-party relationship

were formed or the contracts that governed those relationships, let alone when, if ever, those relationships terminated. Ex. 1 at 56:1-19, 57:22-58:4. In fact, the only contract of which Mr. Pfau was aware is a contract with BedandBreakfast.com, which he maintains was in effect from January 2015 to November 2015, and resumed again in the spring of 2018. Ex. 4 at 3. Mr. Pfau was unable to produce in discovery the contract that governed that relationship. Yet Expedia's records confirm that it received rate and availability information about Shiloh prior to 2015, and in fact, facilitated 28 reservations at Shiloh between 2011 and 2015. Howell Decl. ¶ 3. Ultimately, Mr. Pfau testified that he "[did] not have any idea what relationship Shiloh had that made it possible for Expedia.com to facilitate those reservations," and that "for [the] time period from 2010 to 2018, [he could not] say with certainty what other third-party-booking websites [besides BedandBreakfast.com in 2015] Shiloh Morning Inn was bookable on." Ex. 1 at 106:13-16, 126:5-8; *see also id.* at 123:12-126:8, 64:16-23, 119:15-121:8, 80:2-22. Expedia removed the property from the Websites after Shiloh filed a motion to intervene in this lawsuit. Nadkarni Decl. ¶ 13.

### 4. Prospect Appeared Because of Its Relationship with Destination Management Companies.

Prospect is located in Prospect, Oregon, and first appeared on the Websites in September 2016 because of its relationship with a DMC. Nadkarni Decl. ¶¶ 15-16. As noted above, DMCs enter into agreements with hotels and then work with travel agents and OTAs to facilitate reservations at those hotels. Prospect entered into at least eight different contracts with various tour operators. Ex. 2 at 129:17-130:2. While the owner of Prospect understood that those relationships allowed the DMCs to work with partners to facilitate room reservations, he did not know with which partners each company worked. *See, e.g.*, *id.* at 113:15-115:15, 117:21-121:5, 121:19-128:11, 131:2-132:25, 140:24-145:3; 145:10-147:13, 147:14-149:13, 150:2-152:7. Based on Expedia's records, one of the DMCs apparently contracted with HotelBeds, which acted like a channel manager, to distribute rate and availability information regarding Prospect. Nadkarni Decl. ¶ 15. HotelBeds, in turn, contracted with Expedia and passed on Prospect's rate and availability information. *Id.* ¶ 15. Expedia facilitated one reservation at Prospect in 2016. Howell Decl. ¶ 4.

However, when Expedia tried to facilitate a reservation at Prospect, customers who made it to a payment page on the Websites would often receive an error message that resulted in a failed reservation attempt—apparently because of a technical glitch caused by Expedia verifying rate and availability information through so many third parties. Nadkarni Decl. ¶ 16. As a result of the high error rates, Expedia and HotelBeds agreed that Expedia would stop offering availability information until the technical issue was corrected. *Id.* ¶ 17. Expedia removed Prospect from the Websites when it joined this lawsuit, notwithstanding its ongoing relationship with HotelBeds, which contracts with Expedia to advertise rate and availability information regarding its suite of hotels (including Prospect).

### 5. The Other Hotels Identified by Plaintiffs Are Also Differently Situated.

In support of their Renewed Motion, Plaintiffs submitted a declaration of Tupu O'Neill. Dkt. 126-4. Of the seven hotels identified by name in that declaration, five have direct contracts with Expedia. Howsley Decl. ¶¶ 2-6. More information would be needed to ascertain the individualized facts surrounding the other two properties identified in the declaration. Plaintiffs also point to 233 hotels identified through a web-scraping exercise that they claim appear to be unaffiliated with Expedia. Mot. at 9. In fact, Expedia produced contracts for 143 of these properties and identified third-party affiliations of many others. *Id.* ¶ 7; Morse Decl. ¶ 2. In sum, Expedia's records confirm that almost all of those 233 hotels either had direct contracts with Expedia or were affiliated through their relationships with third parties. Howsley Decl. ¶ 7; Morse Decl. ¶ 2.

### D. Search Engine Advertising of Named Plaintiffs Was Automated and Did Not Include Unavailability Messaging.

As Expedia has explained, the search engine advertisements at issue were automatically generated through Google's Dynamic Search Ads program and did not feature any unavailability message whatsoever. Dkt. 103 at 6; Dkt. 104-28 ¶¶ 4-5; Dkt. 103-23 ¶¶ 4-5; Dkt. 104-25 ¶¶ 4, 6; Dkt. 104-30 ¶¶ 4, 6. Any click on Expedia's search engine advertisements would take the customer to a webpage about Plaintiffs that similarly did *not* include unavailability messaging. Dkt. 104-28 ¶ 6; Dkt. 103-23 ¶ 8; Dkt. 104-25 ¶ 7; Dkt. 104-30 ¶ 8. Moreover, the number of consumers that click on Expedia search engine advertisements for a hotel and subsequently book *any hotel* on the Websites is very low. Dkt. 104-30 ¶ 9; Dkt. 112-26 (setting forth in under seal filing single-digit conversion rate for

search engine marketing ads for hotels on Expedia.com).

**E. Expedia's Phone Numbers Are Not Misleading.**

Plaintiffs once again suggest, without evidence, that Expedia's use of 1-866 numbers on the Websites misleads consumers. Plaintiffs misleadingly excerpt Expedia's call center script, Mot. at 5, to suggest that it provides evidence of consumer deception. The script does nothing of the sort. Rather, it provides clear instructions to its agents: if "[t]he customer wants to book a hotel we do not offer on the website," then the agent should "[t]ell the customer we do not offer the hotel." Dkt. 103-10 at EXP0000497; *see also infra* at 12–13.

**F. The Four Websites at Issue Differ in Significant Ways.**

While Plaintiffs lump all four Websites together, in fact, the Websites are different in important ways. For example, when a consumer searches for hotels in a specific city, Expedia.com, Orbitz.com, and Travelocity.com display available hotels first, followed by hotels for which those websites have no availability. Dkt. 104-13 ¶ 11. Hotels with no availability often will not be visible unless a consumer clicks through multiple search results pages. *Id.* For most of the class period, Hotels.com, on the other hand, generally did *not* display unavailable hotels when a consumer searched by city. Dkt. 104-12 ¶ 9.

Furthermore, the language the Websites use to communicate unavailability varies. The messaging on all Websites changed during the class period, and may have included up to 12 different messages, including "No rooms available on our site for the selected dates: [check-in date] – [check-out date]" and "We have no rooms available for your selected dates: [check-in date] – [check-out date]." Dkt. 104-13 ¶¶ 4-6; Dkt. 104-12 ¶¶ 4, 6, 7. The current Hotels.com unavailability message on infosite pages states: "[hotel name] has no availability for your travel dates on Hotels.com," while the standard unavailability messaging on search results pages is "Fully booked! We're sold out for your travel dates on our site." Dkt. 104-12 ¶¶ 6, 7. The current standard unavailability message on infosite pages on Expedia.com, Orbitz.com, and Travelocity.com states: "Rooms are unavailable for your trip dates on [Expedia, Travelocity, or Orbitz]. Try new dates to check availability," while the standard unavailability messaging on search results pages for these websites is "We are sold out." Dkt. 104-13 ¶¶ 5-6.

While Plaintiffs fault *Expedia* for not testing whether any of these 12 messages are deceptive to consumers, Mot. at 11, *Plaintiffs* have failed to carry *their burden* to support their renewed motion with

a consumer survey or any evidence demonstrating that the unavailability message or advertising can be evaluated through common evidence. Furthermore, Expedia's records do not track which unavailability message was displayed to which consumer at any given time. Dkt. 104-13 ¶ 8; Dkt. 104-12 ¶ 5.

Moreover, Expedia *has* tested the impact on conversion of several unavailability messages, ultimately opting for a more qualified message. In 2013, Expedia tested the message "No rooms available for the selected dates: [insert dates]" against two qualified versions of the message: (1) "No rooms available *on our site* for the selected dates: [insert dates]" and (2) "No rooms available for the selected dates: [insert dates]*" "*Rooms for this hotel are currently unavailable *on our site*." Ex. 5 (emphasis added). The results of that test indicated that changes to conversion were "flat to negative" for the latter two messages, and Expedia ultimately adopted qualified messages. *Id.*; *see also* Dkt. 104-13 ¶¶ 4-5.

### G. The French Court Found that Expedia's Current Unavailability Messaging Is Not Misleading.

Plaintiffs again incorrectly assert that a French court held in 2011 that the unavailability messaging on the Websites is false and misleading. Mot. at 11. As previously explained in detail, the French court in fact specifically held that unavailability messaging similar to what is currently used on the Websites in the United States is *not* misleading. *See* Dkt. 103 at 9-10.

### ARGUMENT

Notwithstanding Plaintiffs' futile attempt to shift the burden of proof to Expedia, *see, e.g.*, Mot. at 11, Plaintiffs "must affirmatively demonstrate [their] compliance with [Rule 23]," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), by proving that all of the Rule 23(a), and the applicable Rule 23(b), requirements are met. *Corvello v. Wells Fargo Bank N.A.*, 2016 WL 3995909, at *4 (N.D. Cal. Jan. 29, 2016) (Chhabria, J.).

Perhaps recognizing the many problems inherent in their proposed Rule 23(b)(3) class, Plaintiffs now ask this Court to certify a Rule 23(c)(4) issues class. But a Rule 23(c)(4) issues class "must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). Moreover, plaintiffs fail to explain how certification of a Rule 23(c)(4) issues class will in any way

materially advance the disposal of this litigation, as is required under Ninth Circuit authority. *See Rahman v. Mott's LLP*, 693 Fed. App'x 578, 579 (9th Cir. 2017). For the reasons set forth below, class certification should be denied.

## I. PLAINTIFFS FAIL TO IDENTIFY A COMMON QUESTION THAT CAN RESOLVE THE CLAIMS, AND THEY ARE NOT TYPICAL OF THE PROPOSED CLASS.

Plaintiffs argue that "the question of whether Expedia's advertising practices violate the Lanham Act is common to all class members," and therefore they are typical of the class. Mot. at 16-17. But Plaintiffs' highly generalized question is not a common question capable of "resolv[ing] an issue that is central to the validity of . . . the claim[] in one stroke." *Dukes*, 564 U.S. at 349-50. Indeed, "in an attempt to identify a common question, [Plaintiffs] have posed the question at an exceedingly high level of generality." *See Corvello*, 2016 WL 3995909, at *6 (denying Rule 23(b)(3) class).

Plaintiffs' renewed motion studiously avoids any discussion of the facts underlying the claims of the Named Plaintiffs, facts that demonstrate that no single question can resolve their claims. The reasons why each of the four hotels appeared on the Websites—and the contracts and third-party relationships governing their appearance—vary dramatically. Without confronting the facts unique to each hotel, it is not possible to determine whether Expedia's alleged conduct could be construed as either false advertising or false association. Hotels whose appearance on the Websites is authorized through third-party relationships have no claim by virtue of the fact that their "names appeared" there, and there is no basis in the record to assume that unavailability messaging would be different on the Websites than on any such hotels' own websites. These problems would only multiply among hotels within the proposed class because there is no "common offending policy," pursuant to which Plaintiffs suggest Expedia violated the law as to each of the potential class members. *See, e.g.*, *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 101, 103 (N.D. Cal. 2016) (denying class certification on commonality grounds because there was no "common offending policy" and the case would require "142 trials within a trial"). Under these facts, the Ninth Circuit has made clear that courts must deny class certification. *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) ("[m]erely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient" to establish commonality); *see also Rodman v. Safeway, Inc.*, 2014 WL 988992, at *10–11 (N.D. Cal. Mar.

10, 2014) (denying false advertising class certification because a number of the class members had not been exposed to the misrepresentation).

For similar reasons, because the Named Plaintiffs were not "injured by the same course of conduct," they are not typical of the class they seek to represent. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Many members of the proposed class, like Prospect, contracted with third parties to disseminate their rate and availability information. Those properties cannot be heard to complain that they appeared on the Websites pursuant to those third parties' contracts with Expedia. Accordingly, because neither commonality nor typicality is satisfied, no class can be certified.

## II. INDIVIDUALIZED ISSUES PREDOMINATE AS TO KEY, NECESSARY ELEMENTS OF BOTH LANHAM ACT CLAIMS, PRECLUDING RULE 23(b)(3) CERTIFICATION.

### A. Plaintiffs Have Not Shown that the False Advertising Elements of Deception and Materiality Are Subject to Common Proof.

Plaintiffs' false advertising claim requires a showing that any "deception is material, in that it is likely to influence the purchasing decision."[3] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Plaintiffs challenge the advertisements, phone numbers, and unavailability messaging on four different websites. Mot. at 2. But Plaintiffs have offered no evidence, common or otherwise, to show the deception or materiality of the challenged conduct.

After submitting a consumer survey riddled with methodological flaws in support of their first motion, Plaintiffs now apparently disavow the survey, while failing to offer any evidence that *any* of the 12 unavailability messages, the advertisements, or the telephone numbers were deceptive and likely to influence a customer's purchasing decision (i.e., material). In fact, the sum total of Plaintiffs' proffered evidence of deception and materiality is a call center script that Plaintiffs misleadingly excerpt. Mot. at 5. In truth, the call center script reveals that Expedia was being careful *not* to mislead or confuse consumers, not that consumers were actually misled, instructing that if "[t]he customer wants to book a

---

[3] The elements to a false advertising claim are: "(1) a false statement of fact . . . ; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

- 12 -

hotel we do not offer on the website," then the agent should "[t]ell the customer we do not offer the hotel." Dkt. 103-10 at EXP0000497. Agents should "[t]ell the customer who we are by mentioning the brand, such as Expedia.com, Hotels.com, and so on." *Id*. at EXP0000496. The script further instructs: "Do not . . . confuse or mislead the customer in any way. Do not say you are the hotel or you work for the hotel. . . . Use 'the hotel' when appropriate. Do not say 'my' or 'our' when talking about anything related to the hotel." *Id*. Agents are to "[o]ffer to search and provide the hotel's phone number," if the customer asks to speak to the hotel. *Id*. at EXP0000497.

"[P]laintiffs must offer some means of providing materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 225 (N.D. Cal. 2015). Because Plaintiffs' renewed motion is entirely devoid of any method of classwide proof to show that a "reasonable consumer" would find any of the challenged statements deceptive and material to a purchasing decision, they have failed to show that common evidence would predominate over individualized issues. *Id*. at 230–31 (denying class certification because "[w]ithout evidence to prove materiality on a classwide basis, no common question exists").

### B. Plaintiffs Have Not Shown that the Validity of Their Marks or Likelihood of Confusion—Two Required Elements of a False Association Claim—Are Subject to Common Proof.

Plaintiffs added a false association claim to their renewed motion, but dedicated a scant nine sentences to the claim and nowhere set out the elements. Mot. at 12, 13, 18, 21-22. To succeed on a false association claim, Ninth Circuit precedent requires at least (1) a valid, protectable trademark, and (2) that the defendant's use of the mark is likely to cause confusion. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014); *see also Marco Bicego S.P.A. v. Kantis*, 2017 WL 2651985, at *4 (N.D. Cal. June 20, 2017) (setting forth all elements of a Lanham Act false association claim). Plaintiffs have failed to present any showing as to the validity of their trademarks or the fact that Expedia's conduct is "likely to cause confusion." *S. Cal. Darts Ass'n*, 762 F.3d at 929.

First, whether a mark is valid and protectable depends on its degree of "distinctiveness," *id*., a question that would be unique to each hotel. There are five categories of distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Id*. (quoting *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010)). Generic marks are ineligible for trademark

protection, while descriptive marks may become protectable "if they acquire a secondary meaning, by becoming distinctive as used on or in connection with [the plaintiff's] goods in commerce." *Id.* (internal quotation marks omitted). Plaintiffs have failed to introduce any evidence regarding this highly fact-specific inquiry, and any such evidence would vary from plaintiff to plaintiff (for example, different properties may have names of widely varying trademark strength, and some may be registered trademarks while others not).

Second, the Ninth Circuit applies an eight-factor test to determine likelihood of confusion: "(1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1162 (N.D. Cal. 2011) (citation omitted). These factors—referred to as the *Sleekcraft* factors—are "non-exhaustive, and . . . should be applied flexibly, particularly in the context of Internet commerce." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

Again, Plaintiffs have failed to introduce any evidence regarding these highly fact-specific inquiries, which would vary from plaintiff to plaintiff depending, for example, on the strength of their marks. It is no surprise, then, that plaintiffs rarely seek to certify claims of false association, and, when they do, courts have uniformly denied certification. For example, in *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 549 (E.D. Tex. 2011), plaintiffs challenged Google's policy allowing competitors to bid on plaintiffs' trademarked key words as a violation of the Lanham Act that would create a likelihood of confusion. The court refused to certify a class because "even if the court were to conclude that Google's policy results in initial interest confusion with regard to [named plaintiffs'] trademark, that does not necessarily mean that Google's policy results in initial interest confusion with regard to the other putative class members' trademarks." *Id.* at 550; *see also Chambers v. Time Warne*r, 2003 WL 749422, at *8 (S.D.N.Y. Mar. 5, 2003) (denying class certification because "the crucial question, even under a false endorsement theory, is whether defendant's use of plaintiffs' names and likenesses caused a likelihood of confusion . . . . Assessment of most of those factors inevitably involves a predominant focus on individual issues.") (citations and internal quotation marks omitted).

Notably, the "*sine qua non* of [false association] is consumer confusion, . . . [and] the owner of the mark must demonstrate likely confusion, not mere diversion." *Network Automation*, 638 F.3d at 1149. Plaintiffs have presented no evidence—common or otherwise—of consumer confusion, which would necessarily be specific to each hotel's trademark, if any. Moreover, "[t]he nature of the goods and the type of consumer is highly relevant to determining the likelihood of confusion." *Id*. at 1152. Plaintiffs do not dispute that in the online travel industry, consumers exercise extreme care and consult multiple resource types before making a purchase. Dkt. 112-16 at 11-13; *id*. at Ex. 1. Based on that uncontroverted evidence, it is unlikely that consumers would be confused by Expedia's advertising. *See also Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) ("Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items.").

Because Plaintiffs have failed to introduce any evidence regarding the validity of Plaintiffs' trademarks or the *Sleekcraft* factors, and any such evidence would vary from plaintiff to plaintiff, they have failed to show that common evidence would predominate over individualized issues.

### C. Injury Is Not Subject to Common Proof, and Plaintiffs Cannot Avoid this Problem Through a Presumption of Injury.

Injury and causation are required elements of *both* Lanham Act claims. *See, e.g.*, *Sugai Prods., Inc. v. Kona Kai Farms, Inc.*, 1997 WL 824022, at *12 (D. Haw. Nov. 19, 1997) (discussing false advertising and false association under the Lanham Act and stating that "[t]he fact of injury is a separate element from the amount of damages, and must be proven under each of Plaintiffs' claims"). Plaintiffs maintain that the primary "injury" for which they seek class certification is class members' lost room reservations and revenue to Expedia and other Expedia-affiliated hotels. Dkt. 103-5 at 234:2-9; Dkt. 103-6 at 298:12-19; Ex. 1 at 141:22-142:2, 143:7-13; Ex. 2 at 198:14-23, 201:7-24.

Yet Plaintiffs do not even attempt to demonstrate that those elements can be established by common proof. Instead, Plaintiffs argue that injury and causation can be proven by "inference." Mot. at 16. That approach fails at every step.

### 1. Plaintiffs Make No Effort To Show How Injury to Hotels—And Causation of that Injury—Could Be Proven on a Classwide Basis.

To certify a class, Plaintiffs must demonstrate that injury can be proven with common proof. *In*

*re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 497 (N.D. Cal. 2008) (denying class certification because plaintiffs "failed to meet their burden under Rule 23 to provide a viable method for demonstrating class-wide injury based on common proof"). Plaintiffs do not argue that all class members have suffered the same (or even any) injury to their bookings or revenue, that any such injury could be demonstrated through common proof, or that they can make any showing of predominance related to this central aspect of their Complaint. Rather, they concede that proof of injury is not "feasible" for an individual hotel, let alone for an entire class with common proof. Mot. at 22. While Plaintiffs suggest that Expedia does not have data available to demonstrate what happens when a consumer views the unavailability message for Plaintiffs, *id.*, in fact, Expedia has produced a trove of clickstream data. Dkt. 112-16 at 9. The real issue, as Plaintiffs recognize, is that any such data does not demonstrate whether a hotel was actually injured by the challenged conduct. Mot. at 22. In other words, even with information about the number of consumers who landed on a particular hotel's infosite page and subsequently booked elsewhere, no reliable conclusions can be drawn whether the people who booked elsewhere did so *as a result of* the unavailability message. Dkt. 112-16 at 26-28, 30-33.

The requirement that Plaintiffs show injury is distinct from the requirement that Plaintiffs prove damages. While the existence of individualized *damages* issues will not necessarily preclude class certification, a plaintiff must nonetheless establish the availability of class-wide proof as to the *fact of injury*. *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 165 (C.D. Cal. 2007) (class treatment improper where actual injury could not be established through common proof). Simply put, Plaintiffs are required to demonstrate injury under the Lanham Act by common proof, and they have not done so.

Without proffering any proposed damages model in the renewed motion, the Plaintiffs have suggested that there could be various measures of harm. But those hypothesized methods of measuring harm only further reveal the individualized nature of Plaintiffs' claims. For example, Mr. Villavicencio, the former owner of Buckeye, conceded that there was a "general upward trend in both occupancy and revenue" during the alleged period of harm. Dkt. 103-5 at 194:17-195:1. He nevertheless testified that Buckeye suffered harm, and that he knew that because he "dr[ove] by and observ[ed] how many cars" were in the parking lots of two of his competitors that contracted with Expedia. *Id.* at 198:11-20;

187:16-189:3.  Mr. Spero, the President of The Mansion, testified that several people (whose names he could not recall) told him they tried to book a room at The Mansion on the Websites but were unable to do so.  Dkt. 103-6 at 298:12-19.

Courts routinely decline to certify damages classes where, as here, injury can be proven only through highly individualized inquiries.  For example, in *Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, the plaintiffs attempted to certify a class of wire mesh manufacturers.  206 F.R.D. 271, 277–78 (C.D. Cal. 2002).  The plaintiffs argued that injury could be presumed under the Lanham Act because the defendant claimed its product was a substitute for plaintiffs' products, the parties sold in the same geographical area, and the defendant made sales of its product as a replacement for plaintiffs'.  *Id.* The court rejected this argument because it "glosses over the fact" that the plaintiffs "will have to prove, as will each class member," that the "alleged false advertising caused customers to substitute Fibermesh for welded wire mesh."  *Id.* at 278.  While proof that the advertisements were false would entitle the plaintiffs "to a presumption that consumers were deceived, . . . [that] presumption does not alleviate a class member's burden of proving that such deception injured it if it wants to recover damages for lost sales and market share."  *Id.* (emphasis added).  Nor does the remedy of disgorgement alleviate the requirement to prove harm and causation with common proof.  "While the disgorgement of profits can serve as an appropriate measure of damages in some instances, . . . it fails to address the lack of class-wide proof of causation" without which a Lanham Act case cannot be certified as a class.  *Salon Fad v. L'Oreal USA, Inc.*, 2011 WL 4089902, at *11 (S.D.N.Y. Sept. 14, 2011) (citation omitted).

Because Plaintiffs have not provided *any* method to prove injury to the Named Plaintiffs, let alone a common method that would avoid individualized inquiry into whether any property lost sales or market share because of the statements, a class cannot be certified under Rule 23(b)(3).

### 2.  Plaintiffs Cannot Avoid this Problem by Presuming Injury.

In an attempt to skirt this fatal predominance problem, Plaintiffs argue that "actual market experience and probable market behavior" justify an "inference" of injury that is sufficient under the Lanham Act.  Mot. at 13, 16 (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (emphasis omitted)).  While such an inference may be sufficient to confer Article III standing, nothing in *TrafficSchool.com* suggests that Plaintiffs can rely on an *inference* to prove the

required elements of injury and causation here under the Lanham Act.

In *TrafficSchool.com*, the Court identified two limited circumstances where it may be appropriate to presume injury under the Lanham Act. Neither narrow exception is available here. First, a plaintiff may invoke a presumption of injury in "false *comparative* advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket." *TrafficSchool.com*, 653 F.3d at 831 (emphasis in original); *see also K&N Eng'g, Inc. v. Spectre Performance*, 2012 WL 12893797, at *6 (C.D. Cal. Aug. 2, 2012) (presumption appropriate only "in cases involving comparative advertising or two-competitor markets" where "the defendant's gains came directly from the plaintiff's pockets"). This is not such a case. As an initial matter, Expedia is not a hotel, and while it facilitates reservations for other hotels, it does not itself rent hotel rooms. In contrast to cases like *U-Haul International, Inc. v. Jartran, Inc.*, where a newspaper ad made false comparisons between defendant's and plaintiff's rental trucks, *see* 793 F.2d 1034, 1040–41 (9th Cir. 1986) and 681 F.2d 1159, 1159–60 (9th Cir. 1982), here, Expedia provides search tools and facilitates reservations for hotels in many geographic markets, Dkt. 112-16 at 3, 16. The online travel industry is a highly competitive market made up of online travel agents, hotel websites, metasites like Kayak, and review sites like TripAdvisor all competing for consumers' views and reservations. *Id.* at 12. Where an average consumer consults multiple resource types over many days before making travel decisions, *id.* at 11-13 & Ex. 1, it would be demonstrably wrong to "presume that every dollar," much less *any* dollar Expedia made facilitating room reservations came "directly out of [Plaintiffs'] pocket," *TrafficSchool.com, Inc.*, 653 F.3d at 831. Plaintiffs are thus required to prove, not presume, injury.

Second, a presumption of injury may be available when a "plaintiff is unlikely to have lost any sales . . . to defendant, and the damages must be measured by defendant's gains from the illicit use." *Id.*; *see, e.g.*, *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120, 123–24 (9th Cir. 1968) (brewer of Black & White beer forced to pay profits to distiller of Black & White scotch). This exception has no application here, where the Named Plaintiffs claim that they lost room reservations and revenue to Expedia and other Expedia-affiliated hotels. Dkt. 103-5 at 234:2-9; Dkt. 103-6 at 298:12-19; Ex. 1 at 141:22-142:2, 143:7-13; Ex. 2 at 198:14-23, 201:7-24 .

Ninth Circuit precedent makes clear that when those two exceptions do not apply, "actual

evidence of some injury resulting from the deception is an essential element of the plaintiff's case."

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989). To hold otherwise would amount to punishment in violation of Lanham Act. *TrafficSchool.com*, 653 F.3d at 831. This is because "when advertising does not directly compare defendant's and plaintiff's products, when numerous competitors participate in a market, or when the products are aimed at different market segments, injury to a particular competitor may be a small fraction of the defendant's sales, profits, or advertising expenses." *Harper House*, 889 F.2d at 209 n.8. Here, Plaintiffs have not shown any injury, much less demonstrated a means of proving injury by common proof, and they cannot sidestep this requirement by asking the Court to presume injury and causation.

Finally, even if an inference of injury based on probable market behavior were available, which it is not, any such inference is wholly unsupported. Plaintiffs have submitted no consumer survey or other evidence to support a claim that customers booked an alternative hotel listed on the travel website as a result of seeing a challenged advertisement or search result or after calling Expedia's call center.[4] Any such assumption or inference would be unsupported in the market for online hotel reservations given the number of resources the average consumer consults and the time spent on the purchasing decision. *See supra* at 5.

### D. Plaintiffs Have Failed To Offer Any Damages Model, Let Alone a Model Consistent with Their Liability Case.

When the Court inquired at the hearing on Plaintiffs' motion for class certification about Plaintiffs' damages model for the smaller proposed class, Plaintiffs' counsel "concede[d] . . . that we need to take a look at the damages model for the smaller group." Ex. 9 at 13:16-20. Yet despite having an additional three months to develop a damages model consistent with their liability case, as required under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), Plaintiffs have failed to put forward *any* damages model whatsoever. To the contrary, Plaintiffs acknowledge that they do not have a formula

---

[4] The clickstream data, which shows the number of visitors who landed on an infosite page and subsequently made a reservation at another hotel, also fails to substantiate a finding of materiality. *See* Dkt. 112-16 at 46-47.

"readily available at this juncture of the litigation," Mot. at 23, and they offer no method of calculating or apportioning Expedia's revenue that they allege to be attributable to the challenged conduct.

Plaintiffs have not demonstrated that damages in the form of disgorged profits "resulting from the particular . . . injury on which . . . liability in this action is premised" are capable of measurement on a class-wide basis. *Comcast*, 569 U.S. at 36. Accordingly, Plaintiffs have failed their burden to set forth a class-wide method of awarding relief that is consistent with their theory of liability, and class certification under Rule 23(b)(3) must be denied. *See, e.g.*, *Rice v. Sunbeam Prods., Inc.*, 2014 WL 794331, at *6 (C.D. Cal. Feb. 24, 2014) (denying certification because plaintiff "has not proffered any expert evidence at all on the subject of calculating relief"); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *12–13 (N.D. Cal. Jan. 7, 2014) (denying certification because plaintiffs provided no damages evidence and "under *Comcast*, the plaintiff is required to provide 'evidentiary proof' showing a classwide method of awarding relief that is consistent with plaintiff's theory of liability").

### E. Class Treatment Would Not Be Superior or Manageable for the Overbroad and Ill-Defined Proposed Class, Which Includes Many Properties That Suffered No Injury.

Under established Ninth Circuit precedent, "[n]o class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594, 596 (9th Cir. 2012) (citing *Denney v. Deutsch Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)) ("the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading"). Here, Plaintiffs' proposed class definition is not limited to hotels that were displayed without authorization or with allegedly false or misleading statements. This fact alone results in a lack of predominance that defeats certification.

Despite the Court's clear instruction to Plaintiffs to limit the proposed class in any renewed motion to properties that have no affiliation with Expedia through a direct contract or a contract with a third party, Plaintiffs have once again put forward a vastly overbroad class definition. Plaintiffs' proposed class includes all hotels "that did not have a booking agreement with Defendants but whose names appeared on [the Websites] or on search engine links to the Websites." Mot. at 1. Plaintiffs' definition ignores the fact that hotels may well—as The Mansion, Shiloh, and Prospect demonstrate—have any number of third-party relationships with channel managers, GDSs, DMCs, and other third

parties that, in turn, authorize the appearance of those hotels on the Websites. *See supra* at 5–8. Such hotels would not have a Lanham Act false advertising or false association claim by virtue of the fact that their "names appeared" on the Websites—even if they did not have "a booking agreement" with Expedia. Moreover, there is no basis in the record to assume that the unavailability messaging would be different on the Websites than on the hotels' own websites (that is, that Expedia's systems showed a particular hotel as unavailable at a time when the hotel's own system had availability).

For similar reasons, a class action is not a superior method of adjudicating this dispute. Fed. R. Civ. P. 23(b)(3). Plaintiffs propose no method—and Expedia is not aware of any method—to identify hotels that appeared on the Websites with unavailability messaging that differed from availability shown on the hotel's own system at any given time. Without a class that is objectively defined and properly tailored to the claims, the Court will not be able to provide the required notice, and class members will not be able to determine whether they are class members or exercise their right to withdraw from the class. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127–28 (9th Cir. 2017) (Rule 23(b)(3) requires a court to consider "the likely difficulties in managing a class action"). Plaintiffs' proposed class thus fails Rule 23(b)(3)'s superiority and manageability requirements as well.

## III. PLAINTIFFS ARE NOT ADEQUATE CLASS REPRESENTATIVES UNDER RULE 23(a), PRECLUDING CERTIFICATION OF ANY CLASS.

Rule 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). A class representative is not adequate unless she is "part of the class and 'possess[es] the *same interest* and suffer[s] the *same injury*' as the class members." *Id.* at 626 (emphasis added). Plaintiffs must also demonstrate that the class representatives will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs and the class they seek to represent have irreconcilable conflicts that preclude certification.

First, Plaintiffs concede that "proof of actual damages is not feasible." Mot. at 23. In an attempt to circumvent this problem, Plaintiffs seek disgorgement but fail to put forward any model or method for calculating a class-wide remedy. Even if Plaintiffs could seek disgorgement based on a presumption of

injury (which they cannot), and even if Plaintiffs had a damages model (which they do not), Plaintiffs' failure to put forward a method of apportioning profits creates conflicts among the class that preclude certification. In closely analogous circumstances, one court denied certification of a class where the plaintiff sought disgorgement of the defendant's profits on behalf of a Lanham Act class but neglected to "put forth a method of apportioning [defendant's] profits or lost sales among the class members." *See W. States Wholesale*, 206 F.R.D. at 277. Because any claim the named plaintiff made to defendant's profits would "necessarily diminish the amount of profits or lost sales another class member can recover," in the absence of a showing "how this conflict among class members can be avoided," the court concluded that the plaintiff was not an adequate class representative. *Id.*; *see also Sugai Prods.*, 1997 WL 824022, at *9 (denying class certification in part because of conflicts that could arise among plaintiffs in the event of a disgorgement of profits). The same is true here.

Second, Plaintiffs have also abandoned potential remedies. The doctrine of res judicata may bar parties to this action from raising in a later suit any claim arising from the same facts that they could have raised here. *See Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *2 (S.D. Cal. Feb. 19, 2008). "A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class." *W. States Wholesale*, 206 F.R.D. at 277 (citation omitted). In contrast to, for example, Buckeye and The Mansion, another hotel might, in theory, be able to rely on revenue data demonstrating a clear dip in profits as a result of challenged conduct, or evidence of consumers or large groups who booked elsewhere because of the challenged unavailability messaging. By professing that no claim to lost profits is even possible, Plaintiffs have acted contrary to the interests of such hotels and shown themselves to be inadequate class representatives. *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010) (denying class certification because class representatives opted to pursue certain claims on a class-wide basis while "jeopardizing the class members' ability to subsequently pursue other claims").

## IV. PLAINTIFFS LACK ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF, WHICH IN ANY EVENT WOULD NOT APPLY GENERALLY TO THE CLASS, PRECLUDING CERTIFICATION UNDER RULE 23(b)(2).

### A. Plaintiffs Lack Article III Standing to Pursue Injunctive Relief.

In addition to the fatal Rule 23(a) problems of lack of commonality, typicality, and adequacy that

prevent certification of a 23(b)(2) class, an injunction class cannot be certified for the additional reason that Plaintiffs lack standing to pursue such relief. Where there is no threat of continuing violation, and thus, no "likelihood of future injury," a plaintiff lacks Article III standing to seek an injunction. *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039–40 (9th Cir. 1999); *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *5 (N.D. Cal. Feb. 13, 2018) ("A Rule 23(b)(2) class can only be certified if the named plaintiff shows that she herself is subject to a likelihood of future injury."). "Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class." *Allen v. ConAgra Foods, Inc.*, 2015 WL 13035176, at *2 (N.D. Cal. Jan. 9, 2015) (Chhabria, J.) (citing *Hodgins-Durgin*, 199 F.3d at 1045). As in *Allen*, this fact alone precludes Rule 23(b)(2) certification here.

None of the Named Plaintiffs has standing to pursue injunctive relief. Buckeye LLC lacks standing to pursue injunctive relief because it no longer owns the hotel. Dkt. 103-12 to 103-15; *supra* at 5. Thus, there is absolutely no showing of a likelihood of future injury to that entity. But even if Buckeye LLC still owned the hotel at issue, Plaintiffs have failed to demonstrate that any of the four hotels faces a likelihood of future injury. Plaintiffs acknowledge that "ceasing the infringing conduct could potentially moot a dispute," Mot. at 13, that "Expedia has removed Plaintiffs from the Websites," *id.* at 14, and they do not dispute that Shiloh and Prospect have been removed as well. Further, Plaintiffs fail to cite any evidence demonstrating a significant likelihood that these hotels will appear on the Websites next to unavailability messaging in the absence of a contractual agreement, much less why there is an actual and imminent threat of future harm. There is none.

Nor is this the type of "exceptional situation[]" where the harm is "capable of repetition, yet evading review" so as to justify standing for injunctive relief. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836–37 (9th Cir. 2014) ("Because mootness concerns whether we have power to hear a case, we apply the 'capable of repetition, yet evading review' exception sparingly, and only in 'exceptional situations.'") (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)). In limited circumstances, even if a named plaintiff's claim is moot, standing is permitted when a "transitory claim will certainly repeat as to the class" for one of two reasons—"either because the individual could nonetheless suffer repeated harm or because it is certain that other persons similarly situated will have

the same complaint."[5]  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090–91 (9th Cir. 2011) (internal

quotation marks and citation omitted) (holding that rejected offer of judgment for class representative's

claim did not moot the employee's class action complaint).  Neither exception is applicable here.

First, Plaintiffs do not allege that the Named Plaintiffs will be relisted on the Websites absent

some direct or third-party agreement that they sign authorizing that action.

Second, Plaintiffs have not shown that "other persons similarly situated will have the same

complaint."  *Id.*  Indeed, the actual complaint of each of the four hotels is not only idiosyncratic, but also

unlikely to be repeated:

- It is undisputed that Buckeye appeared on the Websites because of a coding error and that Expedia's coding and onboarding practices have been changed precisely to prevent any non-contracted hotel from appearing on its Websites going forward.  Dkt. 104-13 ¶¶ 24-28.

- It is undisputed that The Mansion appeared on the Websites because two GDSs did not inform Expedia of the fact that The Mansion had terminated its relationship with the channel manager.  Again, Plaintiffs have not shown that The Mansion's complaint, which relates primarily to actions by GDSs, will be repeated.  Dkt. 104-13 ¶ 34.

- Shiloh cannot even say what led it to appear on the Websites in the first place, let alone when those relationships may have ended.  Ex. 1 at 106:13-16.  There is no evidence that, if Shiloh was improperly listed on the Websites at some point, the cause of that harm will be repeated.

- Prospect apparently appeared on the Websites because its relationship with a DMC, which then contracted with HotelBeds, which then contracted with Expedia, caused the Websites to display an error message when customers reached a payment page. Nadkarni Decl. ¶¶ 15-16.  Prospect has been removed, and there is no evidence that this will happen again.

While Plaintiffs argue that Expedia is simply removing hotels that challenge it "one by one,"

Mot. at 15, there is no common issue or policy resulting in hotels being listed on the Websites in the first

place.  Indeed, the factors that appear to have led to three of the four hotels appearing on the Websites

arose between those hotels and third parties with which each contracted outside of Expedia's purview.

---

[5] Nor is this a case where Plaintiffs' claim is transitory because Expedia is "buy[ing] off the small individual claims of the named plaintiffs."  *Pitts*, 653 F.3d at 1091.

The online travel ecosystem is complex and includes many different types of entities with differing contractual obligations and relationships to hotels and other providers. In the face of this complex online travel ecosystem, Expedia is simply doing the same thing it would do if a hotel reached out directly rather than filing a lawsuit[6]—looking into the specific facts of what led the hotel to be displayed on the Websites and removing hotels that do not wish to be listed.

Because Plaintiffs cannot show any likelihood of future harm, and there is no "transitory claim [that] will certainly repeat as to the class," *Pitts*, 653 F.3d at 1090–91, they do not have standing to seek injunctive relief. *See, e.g.*, *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *8 (N.D. Cal. Aug. 13, 2015), *aff'd*, 723 Fed. App'x 405 (9th Cir. 2018) (plaintiff lacked standing to pursue class injunctive relief because he failed to demonstrate that he is "subject to a likelihood of future injury"); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 510–11 (N.D. Cal. 2017) (plaintiffs lacked standing for a prospective Rule 23(b)(2) injunction because defendants no longer used the challenged policy and plaintiffs failed to demonstrate a "sufficient likelihood" defendants would return to the challenged policy).[7]

"The bottom line is that nothing . . . suggests the Ninth Circuit created a freestanding right to seek injunctive relief based on conduct that has ended," and accordingly, the Court should deny certification of Plaintiffs' Rule 23(b)(2) class. *Bruton*, 2018 WL 1009257, at *7. For the same reasons, Plaintiffs are atypical and inadequate representatives of the injunctive class they seek to represent because they are not entitled to relief, and certification of a 23(b)(2) class should be denied.

### B. Plaintiffs' Claims Are Not Cohesive.

Rule 23(b)(2) only applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

---

[6] The owner of Shiloh stated that he did not reach out to Expedia directly because he "wanted to see what [the lawsuit] was about," Ex. 1 at 127:9-12, and the owner of Prospect did not reach out to Expedia because he "didn't have time for it," Ex. 2 at 225:1-8.

[7] The cases cited by Plaintiffs do not alter this conclusion. For example, in *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, the court found that an injunction was appropriate because the defendants had "willfully violated Polo's trademark rights" and "refused to stop violating those rights until Polo brought suit." 793 F.2d 1132, 1135 (9th Cir. 1986). That is not the case here, where Expedia never intended for Plaintiffs to appear on the Websites without a contract or third party relationship and took prompt action to solve the issue for Plaintiffs and other hotels once on notice. Dkt. 104-13 ¶¶ 23-28.

relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This means "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Rule 23(b)(2) does not apply "when each individual class member would be entitled to a different injunction . . . against the defendant." *Id.*

Here, resolution of the claims would require complex individualized determinations before the Court could even understand the factual underpinning of any third-party contractual relationships that led to a hotel being listed on the Websites. These basic facts would need to be established, and individual third-party contracts discovered and understood, before Expedia's conduct could be "declared unlawful . . . as to all of the class members or as to none of them." *Id.* Furthermore, in order to succeed on a false association claim, for example, each plaintiff would need to demonstrate both the validity of its mark and a likelihood of consumer confusion about Expedia's association with the hotel—a highly fact-specific inquiry. *S. California Darts Ass'n*, 762 F.3d at 929; *see* Section II.B. On these facts, courts have consistently declined to certify Rule 23(b)(2) classes. *See also FPX, LLC*, 276 F.R.D. at 550–52 (refusing to certify a Rule 23(b)(2) class for a Lanham Act false designation claim because each plaintiff would have to prove the validity of their mark and likelihood of consumer confusion as well as countering affirmative defenses such as trademark abandonment); *Chambers*, 2003 WL 749422, at *8 (refusing to certify a class for equitable relief for a Lanham Act false designation of origin claim because the likelihood of confusion test requires individualized inquiries).

Plaintiffs' claims also lack cohesion because no single injunction would be appropriate for the entire class. Notably, Plaintiffs have not even attempted to propose an injunction. Even more problematic, any injunction related to the unavailability messaging would primarily apply to hotels with which Expedia has a contract to appear on the Websites and which agreed to provide last room availability to Expedia. Dkt. 117-1 ¶¶ 2, 5; Nadkarni Decl. ¶¶ 7, 9. Setting aside an injunction related to the unavailability messaging, an injunction for Buckeye might prohibit Expedia from displaying or advertising hotels that have not contracted with Expedia or with any third party. An injunction for The Mansion might prohibit Expedia from displaying or advertising formerly bookable GDS hotels that have terminated their contracts with GDSs (assuming Expedia receives notice). It is unclear what injunction would provide relief to Shiloh because its owner does not know what third-party relationships it had or

may still have.  An injunction for Prospect might relate to Expedia's display of DMC properties that are causing errors in the booking process.  Because no "single injunction . . . would provide relief to each member of the class," certification under Rule 23(b)(2) is not appropriate.  *Dukes*, 564 U.S. at 360; *see Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (denying Rule 23(b)(2) certification where "[p]laintiffs cannot identify a generally applicable practice that they seek to enjoin").

## V.   A RULE 23(c)(4) CLASS WOULD NOT MATERIALLY ADVANCE THE LITIGATION.

Implicitly conceding that a Rule 23(b)(3) class cannot be certified on the record before the Court, Plaintiffs devote less than a page of their renewed motion to argue for certification of a Rule 23(c)(4) class on the issue of liability.  But a Rule 23(c)(4) liability class would still require Plaintiffs to "meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Commc'ns*, 308 F.R.D. at 633.  As discussed in greater detail above, Plaintiffs have failed to show that the elements of the false advertising and false association claims can be demonstrated with common proof.  *See supra* Section II.  They have also failed to identify a common question that could resolve the litigation, and they have not satisfied the requirements of typicality or adequacy.  *See supra* Sections I and III.  Accordingly, a Rule 23(c)(4) class cannot be certified.

But even if Plaintiffs had satisfied all the elements of Rule 23(a) and (b), a Rule 23(c)(4) class still should not be certified because it would not "materially advance the disposition of the litigation as a whole."  *Rahman*, 693 Fed. App'x at 580.  Courts "often decline to certify a liability class where plaintiffs fail to show any model for calculating damages that (1) can be applied classwide (even if the model will be used to make individualized determinations) and (2) is tied specifically to the plaintiffs' theory of liability."  *D.C. by & through Garter v. Cty. of San Diego*, 2018 WL 692252, at *3 (S.D. Cal. Feb. 2, 2018), *appeal filed*, (citation and internal quotation marks omitted) (noting that even if a plaintiff has satisfied predominance as to liability, but not damages, a court can deny a Rule 23(c)(4) class if it will not materially advance the litigation).  The reason for this is simple—"Plaintiff's request to 'reserve the question of how damages should be adjudicated until the liability phase is complete' further suggests Plaintiff has not devised a plan to resolve this case after the liability phase. . . . As a result, Plaintiff has failed to carry his burden of demonstrating that certification of a liability class would materially advance

resolution of the entire case." *Id.* at *4 (citing *Rahman*, 693 Fed. App'x at 579).

Here, even beyond failing to identify any model to calculate damages, Plaintiffs have wholly failed to propose *any* path forward, stating simply that "it would be far more efficient to litigate liability on a classwide basis." Mot. at 24. Courts routinely decline to certify liability cases on the basis of this justification. For example, in *Huu Nguyen v. Nissan North America, Inc.*, 2018 WL 1831857, at *8 (N.D. Cal. Apr. 9, 2018), the court stated that plaintiffs' "perfunctory [Rule 23(c)(4)] argument lacks any comparable examples and, more fundamentally, fails to articulate why a bifurcated proceeding would be more efficient or desirable and is vague as to whether he intends to later certify a damages class, allow class members to individually pursue damages, or has some other undisclosed plan for resolving this case." (citation and internal quotation marks omitted). Accordingly, the court denied certification because the plaintiff "propose[d] no path forward for this case and does not explain how Rule 23(c)(4) certification would advance this litigation. . . . Two sentences of speculation simply cannot justify certification of a Rule 23(c)(4) class." *Id.*

Not only have Plaintiffs failed to satisfy the required elements of a Rule 23(c)(4) class, they have also failed to demonstrate that it would "materially advance" the litigation. Accordingly, a Rule 23(c)(4) class cannot be certified.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Class Certification should be denied.


October 19, 2018                                COVINGTON & BURLING LLP


                                                By: */s/ Emily Johnson Henn*
                                                    Emily Johnson Henn
                                                    Megan L. Rodgers
                                                    3000 El Camino Real
                                                    5 Palo Alto Square
                                                    Palo Alto, CA 94306
                                                    Telephone: 650-632-4700
                                                    Facsimile: 650-632-4800
                                                    Email: ehenn@cov.com

                                                    Simon J. Frankel
                                                    Richard B. Oatis
                                                    One Front Street, 35th Floor
                                                    San Francisco, CA 94111

Telephone: 415-591-7078
Facsimile: 415-955-6578
Email: sfrankel@cov.com

*Attorneys for Defendants Expedia, Inc.,
Hotels.com, L.P., Hotels.com GP, LLC,
Orbitz, LLC, Venere Net S.r.l., and
Expedia Australia Investments Pty Ltd.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION
CIVIL CASE NO. 16-CV-04721-VC