UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| BUCKEYE TREE LODGE AND SEQUOIA VILLAGE INN, LLC, et al., Plaintiffs, v. EXPEDIA, INC., et al., Defendants. | Case No. 16-cv-04721-VC **ORDER GRANTING IN PART AND DENYING IN PART THE RENEWED MOTION TO CERTIFY CLASS AND RE OTHER MISCELLANEOUS MOTIONS** Re: Dkt. No. 126 |
|---|---|

Expedia is an online travel agency that offers hotel bookings on its websites. The plaintiffs are owners of hotels that are not available through Expedia. They allege that when customers search for their hotels on Google or within one of Expedia's websites, Expedia falsely suggests that these hotels can generally be booked on the websites, but they are "sold out" for the period that the customer wants to book them. The plaintiffs further allege that Expedia then steers customers to similar hotels that are, in fact, available on its websites, thus depriving the plaintiffs of business they would have received if Expedia had not misdirected the customers. The plaintiffs have moved to certify a class of hotel owners to seek an injunction to put a stop to this practice. That motion is granted, although for a narrower class than the one the plaintiffs sought to certify. The plaintiffs have also moved to certify a class to seek monetary relief, but that motion is denied.

**I.**

**A.**

Sometimes, even when a hotel has not contracted with Expedia, that hotel's information

finds its way onto one of the numerous websites Expedia operates, including Expedia.com, Hotels.com, Orbitz.com, and Travelocity.com. Expedia can't actually book rooms at many of these hotels, but it tells customers – in one way or another – "we are sold out." By doing so, the plaintiffs allege, customers are misled into thinking that although the hotels are generally available on Expedia's websites, they are fully booked for the desired nights.

One version of the alleged deception begins on a search engine like Google, where a potential customer may search the name of a hotel. An ad may appear in conjunction with the search results that offers a customer the chance to book a room at the searched hotel through Expedia's websites, even if that hotel is not capable of being booked through Expedia. *See* Goddard Decl., Ex. 11, at 2, Dkt. No. 130-11. That potential customer then clicks on the ad and navigates to the "infosite" page for that hotel on Expedia's sites. That infosite page displays a picture of the hotel, provides a map of where it's located, depicts a star rating, and gives details about the property's amenities, like parking, wifi, and breakfast. *See, e.g.*, *id.* at 14-17, 33-37. Next to the hotel's name and information, the website will communicate some variation of the message: "We are sold out." *See* Jolin Decl. ¶ 4-6, Dkt. No. 104-13.

Other customers might begin their search within one of Expedia's websites. They search a specific hotel or a geographic location, which will bring them to a search results page within the site. *See* Goddard Decl., Ex. 11, at 4-5, 21, Dkt. No. 130-11. Again, even if the hotel cannot be booked through Expedia, the search may result in a display of the hotel's name, photos, a star rating, and abbreviated amenities information. Next to this display, Expedia communicates, "We are sold out." *See* Jolin Decl. ¶ 4, Dkt. No. 104-13.

The plaintiffs allege that this type of unavailability messaging misleads customers into believing that their desired hotel has no availability and steers them to hotels that have relationships with Expedia.

Expedia also lists a phone number with each hotel, both on the infosite and search results pages, for customers to call. *See, e.g.*, Goddard Decl., Ex. 11, at 4, 14, Dkt. No. 130-11. The numbers simply connect to the Expedia call center, where call center employees are trained on

how to handle "customers [who] think they are calling the hotel directly," "[b]ecause . . . the placement of our phone numbers within the hotel search results or on the hotel details page of the website[ leads] some customers [to] think they are calling the hotel directly." *Id.*, Ex. 14, at 5, Dkt. No. 130-14. The employees are further instructed to encourage callers to book at hotels that have booking agreements with the company. *Id.* at 5-6.

B.

The four named plaintiffs – owners of Buckeye Tree Lodge, The Mansion, Shiloh Morning Inn, and Prospect Historic Hotel – discovered that Expedia's websites were misdirecting their potential customers in the manner described above. For example, visitors to the Mansion's property told its managers they tried to book stays there, but the hotel was consistently sold out. *See* Goddard Decl., Ex. 9, at 3-4, Dkt. No. 130-9. It turned out that Expedia had been listing the Mansion as sold out, even though the Mansion had no booking agreement with Expedia. Buckeye was also allegedly informed of its appearance on Expedia's websites by potential customers. *See id.* at 3-6, Dkt. No. 130-5. Although Buckeye could not be booked on those websites, from January 2015 through August 2016, 149 people landed on the Buckeye infosite page on Expedia; four of those people subsequently made a reservation with another hotel during the same visit to the website. *Id.*, Ex. 7 ¶ 4, Dkt. No. 130-7.

Only the Mansion was able to get itself removed from Expedia's websites before joining this lawsuit. *See* Goddard Decl., Ex. 8 ¶ 34, Dkt. No. 130-8. Buckeye, on the other hand, tried to get Expedia to remove its information from its websites, but it wasn't until the day after Buckeye sued that Expedia did so. *See id.*, Ex. 8 ¶ 29. Shiloh and Prospect moved to intervene in the suit on August 17, 2018. One week later, Expedia removed Shiloh from its websites. *See* Nadkarmi Decl. ¶ 13, Dkt. No. 145-13. And one month later, Prospect was removed. *See id.* ¶ 18.

The plaintiffs initially moved to certify a class of both "affiliated" and "unaffiliated" hotels – that is, hotels that had direct contractual arrangements with Expedia and hotels that didn't. Although the named plaintiffs were unaffiliated, they contended that they could also represent affiliated hotels, on the theory that Expedia was also making misleading statements

about availability at those hotels. The Court concluded that this proposed class was too broad, and denied the motion without prejudice to filing a renewed motion to certify a narrower class. The plaintiffs now move to certify a class of hotels that have no direct contractual arrangement with Expedia. They seek certification of this class to pursue injunctive relief under Rule 23(b)(2), and disgorgement of Expedia's profits under Rule 23(b)(3). In the alternative to a disgorgement class, the plaintiffs seek to certify a common issues class under Rule 23(c)(4).

## II.

To certify a Rule 23(b)(2) class to pursue injunctive relief, the plaintiffs must first establish standing to seek this relief. Then they must affirmatively demonstrate that the requirements of Rule 23 are met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### A.

In general, at least one named plaintiff must demonstrate a "likelihood of future injury" for the class to have standing to sue for injunctive relief. *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). Expedia argues that the named plaintiffs lack standing because they are not listed on the websites anymore. But the Supreme Court and Ninth Circuit have consistently denied attempts by defendants to rob a court of jurisdiction by taking strategic unilateral action to moot a plaintiff's claims before the plaintiff has had the opportunity to seek class certification. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016); *Chen v. Allstate Insurance Co.*, 819 F.3d 1136, 1142-43 (9th Cir. 2016). A named plaintiff's claim may be "'transitory in nature and may otherwise evade review' in light of a defendant's tactic of 'picking off' lead plaintiffs to avoid a class action." *Chen*, 819 F.3d at 1142-43 (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011)). Courts make an exception to the general rules of justiciability for claims like this where a defendant is likely to continue engaging in its conduct but also evade review as soon as a plaintiff files suit. That's not to say a defendant can't unilaterally remedy its behavior upon receiving a legal complaint, but for a defendant to do so, its reform must be genuine, irrefutably demonstrated, and comprehensive. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986); *see also Ang v. Bimbo Bakeries*

*USA, Inc.*, No. 13-CV-01196-HSG, 2018 WL 4181896, at *11 (N.D. Cal. Aug. 31, 2018).

There is no evidence that Expedia has made a meaningful attempt to ensure that its website will stop suggesting that hotels it cannot book are sold out. Indeed, given the absence of evidence that Expedia has instituted reforms to prevent itself from listing hotels whose rooms are not available on its websites, there is reason to believe that the named plaintiffs themselves could end up on those websites again. Therefore, the named plaintiffs have standing to seek injunctive relief.

**B.**

Next, the plaintiffs must satisfy the preliminary requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and Rule 23(b)(2)'s condition that the plaintiffs seek "uniform relief from a practice applicable" to the whole class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122, 1125 (9th Cir. 2010). They have satisfied these requirements, but for an even narrower class than the one they proposed: owners of hotels that do not have booking agreements with Expedia and are not capable of being booked through Expedia, but appear on Expedia's websites.

The plaintiffs contend that Expedia falsely advertised the information of hotels for which it could not book rooms in violation of the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(B). A false advertising claim consists of the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).[1] With respect to the initial Rule 23(a) requirements, the only meaningful disputes are whether the named

---

[1] The plaintiffs essentially abandon their false association claim. They tacitly concede that the claim is not susceptible of class resolution. *See* Reply at 9-11, Dkt. No. 149. The Court agrees.

5

plaintiffs have identified common questions that will yield common answers, and whether the named plaintiffs are typical of the class.

The plaintiffs have demonstrated that there are common questions of fact and law such that proceeding as a class will generate common answers, at least as to class members whose properties aren't bookable with Expedia but whose properties are (with the exception of those removed in response to the litigation) listed on Expedia's websites as sold out. Expedia's search-engine ads lure potential customers to its websites, and then the websites use language that could mislead customers into thinking that the class members' hotels are generally available on the sites but booked for the nights the customers want. Alongside details about the amenities and features of the properties, Expedia lists a phone number that customers might believe is a number for the hotel, but that actually connects customers to its own call center.

This evidence raises common questions about whether Expedia is violating the Lanham Act's prohibition on false advertising. For example, does Expedia's use of messaging like "We are sold out" mislead the reasonable consumer to think that the hotels are fully booked? And if customers are misled, are the hotels likely to lose business due to Expedia's conduct? These questions are susceptible to proof through, for instance, consumer research or surveys, and the answers will apply to each class member. *Cf. Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). The plaintiffs have already presented some evidence that potential customers have been misled by Expedia's messaging attached to their hotels online. *See, e.g.*, Goddard Decl., Ex. 9, at 3-4, Dkt. No. 130-9. The Court is convinced that the parties can proffer evidence on a classwide basis that tends to prove or disprove that customers are misled or likely to be misled by Expedia's common messaging. Also, because the plaintiffs need to prove only that they're *likely* to lose business as a result of Expedia's conduct to secure injunctive relief, that question can also be demonstrated through evidence such as consumer research or surveys. *See Southland Sod Farms*, 108 F.3d at 1145-46; *see, e.g.*, *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829, 831 (9th Cir. 2011). *See also* Dkt. No. 106-3, at 10.

Expedia argues that the answers to the above questions won't be common across the class

in part because the language its websites used to communicate unavailability during the class period changed over time. For example, at different times the websites displayed, "We have no rooms available for your selected dates . . .", "No rooms available on our site for the selected dates . . .", or "Sorry, the [hotel name] is not available on Hotels.com for your travel dates. You may choose alternative travel dates OR select from the hotels below." Goddard Decl., Ex. 8 ¶ 4, Dkt. No. 130-8; Jay Decl. ¶ 4, Dkt. No. 104-12. Expedia argues that because it doesn't track which unavailability messages were displayed to which customers, the plaintiffs will not be able to evaluate the websites' violation of the Lanham Act through common evidence. This argument is something of a red herring, however. First, three of the websites used the same unavailability message on their "search results" page throughout the class period: "We are sold out." *See* Jolin Decl. ¶ 6, Dkt. No. 104-13. Second, the messages are not so different or so numerous that they can't be evaluated through common proof. And because a class is being certified only for injunctive relief, the plaintiffs may only need to evaluate the messages Expedia currently uses.

Similar to commonality, the typicality inquiry looks to whether class members' claims arise from the same course of events and whether they will make the same arguments as to the defendants' liability. *See Rodriguez*, 591 F.3d at 1124. Expedia argues that in this case, typicality is defeated by the myriad unique ways through which the plaintiffs' information landed on the websites. For example, Buckeye had begun the onboarding process to create an account with Expedia, but ultimately did not go through with the agreement. *See* Goddard Decl., Ex. 8 ¶ 21, Dkt. No. 130-8. But before the onboarding process was terminated, Expedia created a profile for Buckeye that was inadvertently viewable by the public and depicted the hotel as sold out. *Id.* ¶ 23. The Mansion's information, on the other hand, was disseminated to Expedia because the hotel had contracted to share its information with a third party, TravelClick, that itself disseminated the information to three distribution systems, which in turn gave the information to Expedia. *See id.* ¶ 31; Oatis Decl., Ex. 6, Dkt. No. 145-9. When the Mansion ended its relationship with TravelClick, two of the distribution systems failed to communicate to Expedia that it would no longer be providing the Mansion's data, so the hotel remained viewable on

7

Expedia's websites even though Expedia had no inventory for it. Similar to the Mansion, Shiloh and Prospect also have complicated stories of sharing their data with third and fourth parties who ultimately gave the information to Expedia. These differences do, as discussed previously, highlight the problem with the plaintiffs' proposed class definition. But they do not preclude certification of an injunctive relief class altogether.

The plaintiffs are proposing a class of all hotels that lack a direct contractual relationship with Expedia but whose information was represented on Expedia's websites. The problem is that Expedia is actually capable of booking rooms at some of those hotels – specifically, the hotels whose owners made bookings available to third party vendors who in turn made bookings available to Expedia. A hotel that is capable of being booked through Expedia is in a very different position, from a Lanham Act perspective, from a hotel that is not capable of being booked on Expedia. The "sold out" messages may not be misleading for the former category of hotels, while they may well be misleading for the latter category. Therefore, the question of whether injunctive relief is appropriate, and the question of what type of injunctive relief is appropriate, is not common across the class the plaintiffs have proposed.

However, a narrower class – one that consists of hotels that appear on Expedia's websites even though they are not capable of being booked on those sites – is amenable to certification. The primary question for those hotels is: Are the messages misleading given that the hotels are not capable of being booked through Expedia? The answer to that question will be the same for any hotel that cannot be booked through Expedia, regardless of how the hotel ended up on Expedia. And there's another set of questions that can be answered for this narrower class without regard to Expedia's concerns about typicality: Given the automated-but-disorganized nature of the online travel industry, does the Lanham Act impose on Expedia an affirmative obligation to institute controls to ensure that its systems are not causing customers to be misled about availability at unaffiliated hotels? And if so, is Expedia satisfying this affirmative obligation?

Lastly, injunctive relief would uniformly benefit the members of the class. *Rodriguez*,

591 F.3d at 1125. If the Court were to determine that Expedia's messaging was misleading in violation of the Lanham Act, an injunction that required Expedia to communicate more clearly when it didn't have the power to book rooms at a given hotel may be warranted. Expedia could also be required to clearly indicate when listed phone numbers connect directly to its call centers. It could be enjoined to ensure that Google ads pertaining to unbookable hotels clearly say as much. And, as mentioned in the previous section, Expedia could be ordered to take measures to better comb its system to ensure that unaffiliated hotels are not being listed in the first place.[2]

### III.

### A.

The plaintiffs also move to certify a Rule 23(b)(3) class to seek disgorgement of the profits Expedia earned through its alleged false advertisement. In addition to satisfying the preliminary requirements of Rule 23(a), which are discussed above, the plaintiffs must demonstrate that the common questions predominate over individual ones, and that treatment of the claims in a class action is superior to individual adjudication of members' claims. *See* Fed. R. Civ. P. 23(b)(3). The plaintiffs cannot satisfy the requirement of predominance.

In seeking disgorgement of Expedia's profits, the plaintiffs failed to proffer a model or a legitimate theory for how those damages would be estimated, let alone disseminated among class members. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Curiously, the plaintiffs presented a model in connection with their previous motion for class certification, but in their renewed motion, they provide none. Instead, the motion conclusively asserts that the plaintiffs need to "prove defendant's sales only." Renewed Mot. for Class Cert. at 22, Dkt. No. 126-1 (quoting 15 U.S.C. § 1117(a)). As the plaintiffs concede, however, the sales must relate to Expedia's false advertising, and they fail to present a method for estimating that amount. Even if it were proper to consider the model submitted with the initial motion – as the plaintiffs asked

---

[2] Because this is merely a motion for class certification and not an actual request for an injunction, Expedia will remain able to argue that injunctive relief, either in general or in particular forms, is not appropriate. The point now is simply that the case is amenable to various forms of injunctive relief on a classwide basis.

9

the Court to do in its Reply and at the hearing – the plaintiffs would still fail to meet their burden. *See* Hearing Tr. at 43-44, Dkt. No. 163. The model estimates the percentage of all hotels in Expedia's inventory that are actually unaffiliated and are marked, like the plaintiffs' hotels were, as "sold out." For example, if Expedia has 50,000 hotels in its inventory and 1,000 of them are shell pages for hotels it can't sell but are labeled "sold out," then the percentage value is 2%. Plaintiffs' counsel then proposed that their disgorgement award should be 2% of Expedia's total revenue generated over the course of the class period. *Id.* at 44. Although a disgorgement model doesn't need to be mathematically precise, it needs to be logically sound. This model doesn't have anything to do with Expedia's alleged conduct in this case – it doesn't reflect customers' response to messages of "sold out" or their rate of booking referred nearby hotels.

Because the plaintiffs failed to adequately present a classwide disgorgement model, it is inevitable that individual questions of damages will "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34. The motion to certify a Rule 23(b)(3) class is therefore denied.

**B.**

The plaintiffs contend that, in the event they can't get certification of a disgorgement class, the Court should certify a limited class action to decide common issues of liability. *See* Fed. R. Civ. P. 23(c)(4). But the plaintiffs have failed to show that such a class would materially advance the disposition of the case(s) as a whole as compared to merely certifying an injunctive relief class. Therefore, the motion to certify a Rule 23(c)(4) class is denied.

**IV.**

1. The Renewed Motion for Class Certification is granted in part and denied in part. A further case management conference is scheduled for Tuesday, April 23, 2019 at 1:30pm in Courtroom 4, Floor 17. A joint case management statement, including a proposed schedule for the duration of the case, is due Tuesday, April 16, 2019.

2. The first motion to seal (Dkt. No. 125) is granted. Villavicencio's Declaration (Dkt. No. 126-3) is reasonably redacted to omit financial information pertaining to the sale of the Buckeye Tree Lodge. And Exhibit 15 (Dkt. No. 130-15) details Expedia's Google ad

expenditures – the Court sealed this identical document in an earlier sealing motion (Dkt. No. 113).

2. The second motion to seal (Dkt. No. 148) is granted as modified by the Court. Exhibit 38 (Dkt. No. 148-6) will remain under seal and the Reply brief will remain redacted at pages 3-4, and 14 (Dkt. No. 149). The plaintiffs are ordered to file a redacted Reply brief in accordance with this order within 7 days. Exhibit 42 will also be unsealed. (Dkt. No. 148-8).

3. The motions for leave to file a surreply (Dkt. No. 152) and a sur-surreply (Dkt. No. 157) are granted. The filings were considered by the Court in deciding this order.

4. The motions for leave to file amicus briefs (Dkt. Nos. 154, 155) are denied. They were filed too late for the defendants to have a meaningful opportunity to respond.

**IT IS SO ORDERED.**

Dated: March 13, 2019

_____
VINCE CHHABRIA
United States District Judge