UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUCKEYE TREE LODGE AND SEQUOIA VILLAGE INN, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EXPEDIA, INC., et al.,<br><br>Defendants. | Case No. 16-cv-04721-VC<br><br>**ORDER CLARIFYING CLASS DEFINITION, DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT, AND DENYING MOTION TO EXCLUDE**<br><br>Re: Dkt. Nos. 199, 200, 201, 208, 209, 210, 213 |

Both the plaintiffs and Expedia have moved for summary judgment on whether Expedia violated the Lanham Act and whether the plaintiffs are entitled to a permanent injunction. Expedia also argues that the plaintiffs' claims are moot, the class should be decertified, and the opinions of Dr. Dennis should be excluded. These requests are denied, except that summary judgment is granted to Expedia with respect to the allegedly misleading phone numbers. The Court also recognizes an imprecision in its earlier class certification order, and clarifies the class definition.

**1.** There are genuine disputes of fact regarding whether Expedia's conduct violated the false advertising prohibitions of the Lanham Act. In particular, there are genuine disputes about whether: (1) the unavailability messages and Google ads were misleading; and (2) any deception was material to consumers' purchasing decisions. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

With respect to the "false or misleading" element, a small number of Expedia's

unavailability messages—most noticeably, "*We are sold out*"—are literally false when used to describe availability at hotels for which Expedia never had any beds to sell. *See id.*; Crawford Decl. ¶ 8 (Dkt. No. 208-5).[1] Most of the other unavailability messages are not literally false but nonetheless may be misleading. Take, for example, the message "*Your dates are popular! Rooms are unavailable for your trip dates on Expedia. Try new dates to check availability.*" Crawford Decl. ¶ 7. This message seems intuitively to imply that rooms are unavailable because of the particular dates selected, rather than because Expedia is entirely incapable of booking rooms at that hotel.[2] Similarly, the ads Expedia placed on Google seem quite possibly misleading with respect to class member hotels. *See* Dennis Report ¶ 25 (Dkt. No. 195-5); French Decl., Ex. 1 at 93–94 (Dkt. 200-3). Nonetheless, Expedia raises fair concerns about the reliability and probative value of the plaintiffs' survey evidence, and the question of whether these phrases were misleading cannot be answered at summary judgment.

Furthermore, there is a genuine dispute over materiality that also precludes summary judgment. The plaintiffs have offered competent evidence that the unavailability messages and Google ads were material to consumers' purchasing decisions, but Expedia presents contrary evidence suggesting that the messages were not material in the actual context of how consumers make travel decisions.

**2.** Summary judgment is granted to Expedia with respect to claims deriving from Expedia's allegedly misleading display of telephone numbers. The plaintiffs give these claims only cursory treatment, and present no actual evidence that the phone number displays were

---

[1] Other messages that appear literally false when applied to class member hotels, at least in some circumstances, are: "*Sorry, the [Hotel name] is not available for your travel dates. You may choose alternatives dates OR select from the properties below.*"; and "*Fully booked! We're sold out for your travel dates on our site.*" Stevenson Decl. ¶ 7 (Dkt. No. 208-13).

[2] Many of the other messages are similar, e.g.: "*This property has no availability for your travel dates on [Expedia, Travelocity, or Orbitz]*"; "*[Hotel name] has no availability for your travel dates on Hotels.com.*" Other messages appear possibly, but perhaps less likely to be, misleading, e.g., "*Wait a minute. There is no availability for this hotel on Hotels.com. Please amend your search.*" And still other messages seem quite unlikely to have been misleading, e.g. "*Sorry, we aren't taking reservations for this property on our site.*" *See* Crawford Decl. ¶¶ 7, 9; Stevenson Decl. ¶ 7.

false, misleading, or material to consumers' purchasing decisions.[3]

**3.** Expedia argues that regardless of whether the plaintiffs have established a Lanham Act violation, their claims are moot and they are not entitled to the permanent injunctive relief that they seek. But the Court cannot reach either of those conclusions on this summary judgment record.

As a preliminary matter, Expedia seems to conflate standing and mootness in arguing that there is no longer a live controversy. The named plaintiffs have standing to seek injunctive relief because the alleged Lanham Act violations were ongoing at the time the complaint was filed (or at the time the additional plaintiffs intervened). *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000). Expedia itself admits that potentially misleading information about Buckeye Tree Lodge was viewable on its websites for eighteen months, and past the filing of the complaint.[4] *See* Jolin Decl. ¶ 23 (Dkt. No. 209-27). Expedia's arguments that its post-lawsuit actions ended the live controversy are thus better understood as claims of mootness. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case" and Expedia "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 174, 190.

Expedia has not met this burden on the current record. Expedia argues that it has "resolved any errors" causing class member hotels to appear on its websites and has implemented "proactive measures" to prevent these "errors" from reoccurring. Mot. for

---

[3] One piece of potentially relevant evidence—an internal Expedia document acknowledging that the placement of phone numbers on the sites often confuses consumers—appears in the voluminous class certification record, but the plaintiffs did not introduce this document into the record on summary judgment, nor did they even provide the Court with a citation to it. *See* Dkt. 130-14. In any case, the document at most provides evidence that the phone number displays were misleading; it does not support a conclusion that the displays were material to any purchasing decisions.

[4] There is a question about whether Buckeye Tree Lodge's change in ownership prevents Buckeye LLC from seeking injunctive relief on behalf of the lodge. This question has not been fully developed in the papers, but the parties should address it before trial including, if necessary, substituting the proper entity.

Summary Judgment at 14 (Dkt. No. 209). For example, Expedia points to "investigations" conducted by its "Health and Safety team" and to contractual obligations it imposes on the bed banks it works with as proof that the allegedly wrongful conduct will not recur. *See* Jolin Decl. ¶ 14 (Dkt. No. 209-27); Puig Sainz Decl. ¶¶ 4-5 (Dkt. No. 209-35). But these assertions—and the evidence that accompanies them—are too vague and conclusory to meet the high burden of showing mootness. Expedia also emphasizes recent policy changes ending the practice of "calling" Global Distribution Systems for availability information and preventing Expedia from bidding on Google ads for hotels that do not have availability for a certain period of time. *See* Jolin Decl. ¶¶ 12-13 (Dkt. No. 209-27); Taylor Decl. ¶ 7 (Dkt. No. 209-47). But Expedia portrays these reforms as business decisions, while failing to show that there is anything to keep it from reversing these decisions if business considerations change. *See EEOC v. Federal Express Corp.*, 558 F.3d 842, 847-48 (9th Cir. 2009). Indeed, Expedia's repeated assertions about the dynamic and complicated nature of the online travel industry suggest that business considerations in fact frequently do change, and undercut its arguments that the changes are permanent or will prevent any future misrepresentations from occurring.

      Relatedly, Expedia has not shown on this record that permanent injunctive relief is categorically unavailable to the plaintiffs. As discussed above, there is a genuine question whether class members are likely to be harmed in the future absent an injunction that either bars Expedia from making misleading statements about hotels it is incapable of booking or requires Expedia to institute reforms designed to minimize the chances of such statements inadvertently appearing. *See Sierra Club v. Trump*, 963 F.3d 874, 895 (9th Cir. 2020) (stating that a permanent injunction is warranted where, among other things, "a plaintiff will suffer an irreparable injury absent injunction") (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Genuine questions similarly remain as to whether these future harms—or the harms the plaintiffs suffered in the past—rise to the level of irreparable harm, and whether legal remedies are inadequate compensation for these harms. *See id.; Apple Inc. v. Pystar Corp.*, 658 F.3d 1150, 1152-53, 1161 (9th Cir. 2011).

These rulings are without prejudice to Expedia renewing its arguments relating to mootness or the availability of injunctive relief based on the record developed at trial.

**4.** At the class certification stage, the Court agreed that an injunctive relief class could be certified but narrowed the class definition. *See* Dkt. No. 164. The narrower class definition was not sufficiently precise, resulting in some confusion at the summary judgment stage and prompting a suggestion by Expedia that the class should be decertified. The class does not need to be decertified, but its composition needs to be clarified. Specifically, the class consisting of "hotels that do not have booking agreements with Expedia and are not capable of being booked through Expedia, but appear on Expedia's websites" includes hotels that appeared on Expedia's websites when they were not capable of being booked through Expedia *at some point* during the class period, regardless of whether they previously had booking agreements with Expedia or later entered into agreements with Expedia that gave Expedia booking capabilities.[5] In addition, it includes hotels about whom Expedia will make similar statements in the future despite being incapable of booking rooms at those hotels. *See Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 864, 868 (9th Cir. 2014); *Walters v. Reno*, 145 F.3d 1032, 1036, 1048 (9th Cir. 1998). The inclusion of these possible future class members helps satisfy the numerosity and other requirements of Rule 23. *See Saravia v. Sessions*, 280 F.Supp.3d 1168, 1202-03 (N.D. Cal. 2017), *affirmed on other grounds* 905 F.3d 1137 (9th Cir. 2018).

**5**. Expedia has not shown that Dr. Dennis's opinion must be excluded, especially in the context of a bench trial. *See United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010).

**6.** A further case management conference is scheduled for October 6, 2020, at 2:00 p.m. via Zoom. The parties should be prepared to discuss the scheduling of the pretrial conference and

---

[5] For this reason, Expedia's argument that Prospect is not a class member because Expedia facilitated one reservation there in 2016 is incorrect. The fact that a hotel was capable of being booked at some point in time does not automatically exclude that hotel from being a class member if they later became incapable of being booked.

trial, as well as any potential complications they foresee in conducting a bench trial over Zoom.

**IT IS SO ORDERED.**

Dated: September 9, 2020

_____
VINCE CHHABRIA
United States District Judge